United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IXL LEARNING, INC.,
Plaintiff,

v.

ALPHA HOLDINGS, INC.,
Defendant.

Case No. 26-cv-08273-TSH

**ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION**

Re: Dkt. No. 25

## I. INTRODUCTION

Plaintiff IXL Learning, Inc. ("IXL") brings this action against Defendant Alpha Holdings, Inc. ("Alpha"), alleging Alpha stole IXL's intellectual property and proprietary information and used it within Alpha's products which were sold to its customers. ECF No. 1. Pending before the Court is Alpha's Motion to Compel Arbitration. ECF No. 25 ("Mot."). The Court finds this matter suitable for disposition without oral argument pursuant to Civil Local Rule 7-1(b) and **VACATES** the December 3, 2026, hearing. For the reasons stated below, the Court **DENIES** the motion.[1]

## II. BACKGROUND

### A. Factual Background

IXL, located in California, is an educational technology company that provides its customers with curricula and instructional resources, actionable analytics, and a state-of-the-art assessment suite. First Am. Compl. ("FAC") ¶¶ 1, 12 (ECF No. 16). Alpha, located in Texas, offers educational services and operates several educational subsidiaries and brands. *Id.* ¶ 13.

Overall, IXL alleges that Alpha circumvented and bypassed IXL's safeguards in order to target IXL's data and back-end systems, stole educational data and content from IXL and used

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 17-1, 17-2.

them to train Alpha's artificial intelligence (AI) models, resold IXL's services through Alpha's platform without IXL's permission, continued to evade IXL's safeguards after IXL terminated Alpha's accounts, and used IXL's trademarks to promote and sell Alpha's services. *Id.* ¶ 2–4, 32, 40. IXL seeks preliminary and permanent injunctive relief enjoining Alpha from continuing to engage in this wrongful conduct. *Id.* at 23–24.

**1. IXL's Services**

IXL is an educational technology company that provides an online learning platform, educational content, assessments, and related student-learning services used by schools, students, and families. *Id.* ¶ 12. IXL sells access to its services to schools, school districts, classrooms, families, and adult learners in the form of an account. *Id.* ¶ 20.

IXL limits access to its systems to paid subscribers and requires IXL users to agree to its Terms of Service ("TOS"). *Id.* ¶ 2; *see* Declaration of Anthony E. Lindsey II ("Lindsey Decl.") (ECF No. 26), Ex. B (TOS) (ECF No. 26-2). The TOS governs "use of the online and/or mobile services, websites, and software provided on or in connection with www.ixl.com (collectively, the 'Service')," and applies "to all visitors, users, and others who access, purchase, or otherwise use the Service." TOS at 1.

The TOS prohibits certain actions. IXL users may not share their account unless expressly authorized by IXL. *Id.* at Section 7. And users "agree not to reproduce, duplicate, copy, sell, resell or otherwise exploit for any commercial purposes, any portion of the Service, use of the Service, or access to the Service." *Id.* at Section 12.

The TOS contains a provision titled, "IXL's Proprietary Rights," that states:

> You acknowledge and agree that the Service and any necessary software used in connection with the Service ('Software') contain proprietary and confidential information that is protected by applicable intellectual property and other laws. You further acknowledge and agree that information presented to you through the Service is protected by copyrights, trademarks, service marks, patents or other proprietary rights and laws. Except as expressly authorized by IXL, you agree not to copy, modify, rent, lease, loan, sell, distribute or create derivative works based on the Service or the Software, in whole or in part. Any automated scraping, harvesting, indexing, mining, or any other extraction of any content from the Service is expressly prohibited.

United States District Court
Northern District of California

> The Service is protected by copyright and other laws in both the United States and elsewhere. Under the terms of this Agreement, it is expressly forbidden to distribute or reproduce the content of the Service or any portion thereof by any means, including but not limited to electronic and print.
>
> IXL reserves the right to cancel your account without refund if it is determined that you have violated this section of the Agreement.

*Id.* at Section 16.

The TOS contains a provision titled, "Governing Law And Venue," that states in pertinent part:

> You agree that: (i) the Service shall be deemed solely based in California; and (ii) the Service shall be deemed a passive one that does not give rise to personal jurisdiction over us, either specific or general, in jurisdictions other than California. The formation, performance, construction, validity and enforceability of these Terms of Service shall be governed by federal law and the internal substantive laws of the State of California, without respect to its conflict of laws principles, except that the Arbitration Agreement set forth in Paragraph 22 is governed by the Federal Arbitration Act ('FAA'), 9 U.S.C. §§ 1-16. For avoidance of doubt, the State Specific provisions of Paragraph 5, above, shall also govern where applicable. . . . You agree to submit to the personal jurisdiction of the federal and state courts located in San Mateo County, California, USA, for any actions for which we retain the right to seek injunctive or other equitable relief in a court of competent jurisdiction, including to prevent the actual or threatened infringement, misappropriation or violation of our copyrights, trademarks, trade secrets, patents, or other intellectual property or proprietary rights, as set forth in the Arbitration provision below, including any provisional relief required to prevent irreparable harm.

*Id.* at Section 21.

The TOS contains a provision titled, "Arbitration," that states in pertinent part:

> Except as set out in sub-paragraph B, below, you and IXL agree to resolve any claim, counter or cross claim, issue, dispute, or controversy arising out of or relating to the Terms of Service, or the breach or alleged breach thereof (collectively, 'Claims'), by binding arbitration administered by JAMS under its Optional Expedited Arbitration Procedures then in effect for JAMS. The contact information for JAMS, and a link to the applicable JAMS rules, may be found at www.jamsadr.com. Without limiting the generality of the foregoing, the term Claims includes any Claim arising out of or relating to your use of the Service as defined in the Terms of Services or use of any of the following (i) www.ixl.com, (ii) mobile applications associated with www.ixl.com, and (iii) any other IXL website, app or online service which links to these Terms of Service. The term Claims also includes any Claims arising out of or relating to the enforceability of this Arbitration Agreement including Claims of

> fraud, duress, unconscionability or violation of public policy. All Claims as defined by this paragraph are expressly delegated to the arbitrator and all such Claims are subject to arbitration.
>
> Notwithstanding the foregoing, you or IXL may file Claims in small claims court, so long as the Claims remain in such court and advance only as to individual (i.e., non-class and/or non-representative) claims for relief. If Claims filed in small claims court advance into a purported class or representative action either party may require the litigation to be stayed for such Claims to be arbitrated on an individual basis.

*Id.* at Section 22.A. The Arbitration provision goes on to address "Excluded Claims," stating:

> **The following 'Excluded Claims' are not covered by or subject to arbitration pursuant to this Arbitration Agreement and shall be decided by a court and not the arbitrator:** (1) Claims filed by IXL to prevent or enjoin the actual or threatened infringement, misappropriation or violation of our copyrights, trademarks, trade secrets, patents, or other intellectual property or proprietary rights; (2) Claims that you have failed to satisfy the requirement to engage in good faith resolution prior to filing a demand for arbitration (as set out in sub-paragraph C); (3) a request for a public injunctive relief remedy, which shall be determined in court in accordance with subparagraph H; (4) any Claim brought as part of a Mass Arbitration, which shall be determined in accordance with subparagraph I; (5) Claims for temporary or provisional remedies to preserve the status quo pending the appointment of an arbitrator; (6) disputes regarding the characterization of a Claim as excluded or not under this definition of Excluded Claims.

*Id.* at Section 22.B (the "Exclusion Clause") (emphasis in original). The Arbitration provision continues:

> As part of this Arbitration Agreement, you agree to make a good faith effort to resolve any Claim informally prior to initiating a formal arbitration proceeding (by filing a demand for arbitration). Before filing a demand for arbitration, you must send a notice to the other party that describes the Claim. The notice must include your name and contact information (address, telephone number, and email address) and a detailed description of (1) the nature and basis of the Claim and (2) the nature and basis of the relief sought, with a detailed calculation of the amount of any monetary Claim. . . . If requested by IXL, you must personally participate in a telephone settlement conference. . . . If the Claim is not resolved within sixty (60) days after receipt of the notice (which period can be extended by agreement of you and us), you or IXL may commence an arbitration proceeding under the terms set forth below. Compliance with and completing this informal dispute resolution process on an individualized basis is a condition precedent to filing a demand for arbitration. The statute of limitations shall be tolled while the parties engage in this informal dispute resolution process. If the sufficiency of a notice or compliance with this informal dispute resolution process is at issue,



United States District Court
Northern District of California

> that issue must be decided by a court at either party's election; any arbitration proceeding (including any obligations to pay further fees) shall be stayed pending resolution of the issue. A court of competent jurisdiction shall have the authority to enforce this condition precedent to arbitration, which includes the power to enjoin or stay the filing or prosecution of a demand for arbitration or litigation in breach of this Arbitration Agreement.
>
> After completing good faith negotiation in accordance with sub-paragraph C, you or IXL may demand arbitration in accordance with this Arbitration Agreement and the applicable JAMS rules.

*Id.* at Section 22.C–D. Finally, the Arbitration provision states:

> **You and IXL agree that, by agreeing to arbitrate, the parties are each waiving the right to a trial by jury or a trial before a judge in court.** You and IXL acknowledge that arbitration will limit your and our legal rights, including the right to participate in a class action, the right to a jury trial, the right to conduct full discovery, and the right to appeal in court.

*Id.* at Section 22.F (emphasis in original).

**2. The Parties' Relationship**

IXL alleges the following in the FAC. In 2019, an Alpha entity signed up to use IXL's platforms and data as a customer when it subscribed to IXL. FAC ¶ 33. In doing so, Alpha agreed to IXL's TOS. *Id.* In 2022, Alpha began targeting IXL's data and back-end systems by circumventing and bypassing IXL's safeguards. *Id.* ¶¶ 1–2, 34–35. In 2023, Alpha began offering its own services for sale, which integrated and relied heavily upon IXL's proprietary data, information, systems, and products. *Id.* ¶ 36.

In February 2024, after learning of Alpha's misconduct, IXL sent a cease-and-desist letter demanding Alpha stop engaging in activity that violates IXL's TOS. *Id.* ¶ 4. In 2024 and 2025, IXL terminated several of Alpha's IXL accounts. *Id.* Alpha continued to access IXL's platform by inducing families to share their IXL credentials with Alpha. *Id.*

In September 2025, IXL sent a cease-and-desist letter demanding Alpha stop using IXL's registered trademark on Alpha's websites without permission. *Id.* ¶ 42. When Alpha did not comply, IXL sent another letter in May 2026, demanding Alpha remove all materials displaying IXL's trademark. *Id.* ¶ 43. On May 22, 2026, Alpha responded that it believed it had eliminated all IXL trademarks from its websites. *Id.* Alpha has stopped reselling IXL products without

permission in violation of IXL's TOS. *Id.* ¶ 48.

On August 10, 2026, IXL filed this action against Alpha. ECF No. 1. On October 8, 2026, Alpha filed an arbitration demand before JAMS, bringing five declaratory relief claims and two claims for damages and injunctive relief against IXL. Lindsey Decl., Ex. A (Demand for Arbitration) (ECF No. 26-1). On October 29, 2026, IXL responded to Alpha's arbitration demand arguing JAMS lacks jurisdiction because Alpha failed to comply with the informal dispute process and Alpha's declaratory relief claims are not within the scope of the parties' arbitration agreement. Declaration of Jacob M. Heath ("Heath Decl.") (ECF No. 27-1), Ex. 1 (Response to Demand for Arbitration) (ECF No. 27-1 at 3). IXL's Contract Administration Manager avers that Alpha did not notify IXL or otherwise comply with Section 22.C of the TOS prior to Alpha commencing arbitration before JAMS. Declaration of Erin Felling ¶ 4 (ECF No. 27-2). Alpha's counsel avers that after filing its demand for arbitration, Alpha has attempted to discuss resolution of the parties' dispute with IXL and IXL has not indicated whether it is amenable to such resolution. Declaration of Joseph Farris ¶ 4 (ECF No. 28-1).

**3. The Parties' Actions**

IXL alleges the following in the FAC. IXL's flagship product is an online educational platform for students that provides lessons, diagnostics, assessments, practice activities, and student-performance data. FAC ¶ 17. The platform contains IXL's intellectual property and proprietary information which includes curriculum, student performance data, assessments, and the platform software used to deliver content. *Id.* ¶¶ 18, 53, 68–69, 80. IXL provides its users with unique credentials they can use to access IXL's platform and services to ensure that only authorized users can access IXL's valuable platform and proprietary content. *Id.* ¶ 23.

IXL implements numerous safeguards to prevent unauthorized access to its platform and content, including provisioning credentials to each subscriber, using internal databases not directly accessible from public Internet, and limiting account sharing in its TOS. *Id.* ¶ 51. These measures constitute technological measures that effectively control access to IXL's copyrighted works. *Id.* ¶¶ 70–74. While posing as a legitimate IXL customer, Alpha circumvented IXL's access controls and extracted IXL's proprietary information from its back-end systems. *Id.* ¶ 77. After IXL

United States District Court
Northern District of California

restricted or terminated access to Alpha's IXL accounts, Alpha intentionally bypassed IXL's technical controls and accessed IXL's platform, systems, and data without authorization or in excess of authorized access. *Id.* ¶¶ 52, 78. Alpha did so by using affiliates' credentials and by inducing other IXL customers to provide Alpha account information and access to IXL systems so that Alpha could obtain IXL's platform content from IXL's protected computers. *Id.* ¶¶ 47, 52–53. Through this circumvention, Alpha also gained unauthorized access to IXL's copyrighted works. *Id.* ¶¶ 53, 80.

Alpha heavily leverages AI to power its programs and uses AI to direct students to adaptive apps based on student needs. *Id.* ¶ 30–31. Alpha stole educational data and content from IXL in order to develop its AI powered educational programming and curriculum. *Id.* ¶ 32. Alpha then used years of scraped data from IXL's platform to launch its own educational apps. *Id.* ¶¶ 48, 79. In June 2026, IXL began receiving subscription cancellations from customers citing Alpha as the reason for leaving. *Id.* ¶ 48.

IXL has suffered and will continue to suffer harm from Alpha's conduct, "including loss of control over its platform, content, and marks; investigation and enforcement costs; customer confusion regarding whether Alpha and IXL were affiliated or partnered; loss of goodwill; and harm arising from [Alpha's] alleged exploitation of IXL's services and content for competing commercial programs." *Id.* ¶¶ 49, 54–55, 82–84.

**B. Procedural Background**

On August 10, 2026, IXL filed this action against Alpha alleging nine causes of action: (1) Violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030); (2) Trademark Infringement Under the Lanham Act, § 32 (15 U.S.C. § 1114); (3) False Designation of Origin/False Advertising Under the Lanham Act, § 43(a) (15 U.S.C. 1125(a)); (4) Unfair Competition (Cal. Bus. & Prof. Code §§ 17200 et seq.); (5) Intentional Interference with Contractual Relations; (6) Breach of Contract/Terms of Service; (7) Breach of the Implied Covenant of Good Faith and Fair Dealing; (8) Unjust Enrichment; and (9) Misappropriation of Trade Secrets (Defend Trade Secrets Act, 18 U.S.C. §§ 1836 et seq.; California Uniform Trade Secrets Act, Cal. Civ. Code §§ 3426 et seq.). ECF No. 1 ("Compl."). IXL sought, *inter alia*, compensatory damages, statutory damages,

restitution, and injunctive relief. Compl. at 25–26.

On September 3, 2026, IXL filed the operative First Amended Complaint ("FAC") against Alpha alleging five causes of action: (1) Violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030); (2) Trademark Infringement Under the Lanham Act, § 32 (15 U.S.C. § 1114); (3) False Designation of Origin/False Advertising Under the Lanham Act, § 43(a) (15 U.S.C. 1125(a)); (4) Digital Millennium Copyright Act – Circumvention of Security Measures (17 U.S.C. § 1201); and (5) Misappropriation of Trade Secrets (Defend Trade Secrets Act, 18 U.S.C. §§ 1836 et seq.; California Uniform Trade Secrets Act, Cal. Civ. Code §§ 3426 et seq.). ECF No. 16. IXL seeks injunctive relief. FAC at 23–24.

On October 8, 2026, Alpha filed an arbitration demand before JAMS. Lindsey Decl., Ex. A. On October 29, 2026, IXL responded to Alpha's arbitration demand. Heath Decl., Ex. 1.

On October 8, 2026, Alpha filed the instant Motion to Compel Arbitration. ECF No. 25 ("Mot."). On October 29, 2026, IXL filed an Opposition. ECF No. 27 ("Opp."). On November 12, 2026, Alpha filed a Reply. ECF No. 28 ("Reply").

## III. LEGAL STANDARD

The Federal Arbitration Act ("FAA") "governs the enforceability of arbitration agreements in contracts involving interstate commerce." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013) (citing 9 U.S.C. § 1 *et seq.*). The FAA "makes agreements to arbitrate 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract.'" *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 649–50 (2022) (quoting 9 U.S.C. § 2). The purpose of the FAA is to "rigorously enforce" private arbitration agreements according to their terms. *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013). The FAA "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4) (emphasis in original). The Court's role is to decide: "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). "If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement

in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "However, these gateway issues can be expressly delegated to the arbitrator where the parties *clearly and unmistakably* provide otherwise." *Brennan*, 796 F.3d at 1130 (emphasis in original) (cleaned up). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Chiron*, 207 F.3d at 1131 (cleaned up).

"When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *accord Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012). "California law, like federal law, reflects a strong policy favoring arbitration agreements." *Wagner Constr. Co. v. Pac. Mech. Corp.*, 41 Cal. 4th 19, 31 (2007) (cleaned up). "A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." Cal. Civ. Proc. Code § 1281. "The party seeking arbitration bears the burden of proving the existence of an arbitration agreement, and the party opposing arbitration bears the burden of proving any defense, such as unconscionability." *Pinnacle*, 55 Cal. 4th at 236.

In deciding a motion to compel arbitration, courts must "treat the facts as they would when ruling on a motion for summary judgment, construing all facts and reasonable inferences that can be drawn from those facts in a light most favorable to the non-moving party." *Shepardson v. Adecco USA, Inc.*, No. 15-cv-05102-EMC, 2016 WL 1322994, at *2 (N.D. Cal. Apr. 5, 2016) (quoting *Chavez v. Bank of Am.*, No. C10-653-JCS, 2011 WL 4712204, at *3 (N.D. Cal. Oct. 7, 2011)). A court may consider evidence outside the pleadings when ruling on a motion to compel arbitration. *Thompson v. Isagenix Int'l LLC*, 849 F. App'x 712, 712 (9th Cir. 2021).

## IV. DISCUSSION

Alpha moves to compel IXL's claims under the Computer Fraud and Abuse Act ("CFAA") and Digital Millenium Copyright Act ("DMCA") to arbitration. Mot. at 1. Alpha further requests that the Court stay the action until the related arbitration proceedings pending before JAMS are completed. *Id.* IXL requests the Court deny Alpha's Motion because (1) IXL's CFAA and

DMCA claims are excluded from the agreement to arbitrate; and (2) a stay is not warranted. Opp. at 1–2.

In sum, the Court concludes that IXL's CFAA and DMCA claims are not subject to arbitration because they are excluded from the parties' arbitration agreement. The Court further concludes that a stay of this action is not warranted.

**A. Exclusion From Arbitration**

There is no dispute that the parties entered into a contract that contains a valid arbitration agreement governed by the FAA and that the agreement generally applies to IXL's claims. The parties disagree on whether IXL's CFAA and DMCA claims fall within the Exclusion Clause. Alpha argues that the claims fall outside the Clause because they are not claims to enjoin the misappropriation or infringement of "intellectual property." Mot. at 11:24–13:12. IXL contends that the claims fall within the Clause because they seek to enjoin Alpha's unauthorized access to IXL's proprietary and confidential information to prevent and/or stop Alpha's theft and violation of IXL's intellectual property and proprietary rights. Opp. at 1:25–2:11, 10:24–26.

If a court finds that an agreement to arbitrate exists, the court must then determine whether the agreement encompasses the dispute at issue. *Brennan*, 796 F.3d at 1130. Generally, an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (citation omitted). Moreover, the party "resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000).

An "express provision excluding a particular grievance from arbitration" provides positive assurance that an arbitration clause does not cover an asserted dispute. *AT&T Techs.*, 475 U.S. at 650 (citation omitted). Thus, courts "interpret such exclusions insofar as they may restrict the scope of the arbitration clause." *Homestake Lead Co. of Missouri v. Doe Run Res. Corp.*, 282 F. Supp. 2d 1131, 1141 (N.D. Cal. 2003).

Here, as discussed below, the Court finds that IXL meets its burden in showing that its

CFAA and DMCA claims fall within the Exclusion Clause. Accordingly, the Court **DENIES** Alpha's motion to compel arbitration for IXL's CFAA claim (Claim 1) and DMCA claim (Claim 4).

### 1. Construction Of Exclusion Clause

As a threshold matter, the parties disagree over the proper construction of the Exclusion Clause. "Arbitration under the [FAA] is a matter of consent, not coercion[.]" *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). As such, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs.*, 475 U.S. at 648 (citation omitted). Therefore, Alpha cannot compel any claims to arbitration that fall within the Exclusion Clause.

The parties agree that California law governs the interpretation of the TOS, including the Exclusion Clause. Mot. at 11:24–13:12; Opp. at 8:22–13:2; *see Ford v. The Silver F, Inc.*, 110 Cal. App. 5th 553, 566 (2025) (noting "whether the parties' arbitration agreement requires arbitration of" certain claims is an issue "of contract interpretation"). In California, contract interpretation is a question of law "when it is based on the words of the instrument alone[.]" *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 395 (2008). "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." *Bank of the West v. Superior Ct.*, 2 Cal. 4th 1254, 1264 (1992) (in bank) (citing Cal. Civ. Code § 1636). "Such intent is to be inferred, if possible, solely from the written provisions of the contract." *State of California v. Cont'l Ins. Co.*, 55 Cal. 4th 186, 195 (2012) (citation omitted). "If contractual language is clear and explicit, it governs." *Bank of the West*, 2 Cal. 4th at 1264. "The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage,' controls judicial interpretation." *Cont'l Ins. Co.*, 55 Cal. 4th at 195 (citing Cal. Civ. Code §§ 1638, 1644) (cleaned up). Moreover, "language in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract." *Another Planet Ent., LLC v. Vigilant Ins. Co.*, 15 Cal. 5th 1106, 1136 (2024) (citation omitted). These principles of contract interpretation apply equally to interpreting an exclusionary clause of an arbitration

agreement. *Ford*, 110 Cal. App. 5th at 566–70.

Here, Alpha argues that the Exclusion Clause reaches only those claims "specifically seeking to enjoin infringement or misappropriation of intellectual property rights."[2] Mot. at 11:24–13:12. According to Alpha, to fall within the Clause, a claim must "seek to stop a misappropriation or infringement of intellectual property" or be "premised on statutory provisions that create an *ownership interest* in any intellectual property right." *Id.* (emphasis in original). And the Clause categorically excludes claims seeking to enjoin "Alpha from engaging in allegedly unlawful *access* to IXL's website and/or *circumvention* of technological measures related to its website." *Id.* (emphasis in original). IXL contends that the Clause covers claims that seek to enjoin the actual or threatened violation of IXL's intellectual property and proprietary rights. Opp. at 10:24–16:10.

The Exclusion Clause excludes from arbitration:

> Claims filed by IXL to prevent or enjoin the actual or threatened infringement, misappropriation or violation of our copyrights, trademarks, trade secrets, patents, or other intellectual property or proprietary rights.

TOS at Section 22.B. The term "claim" is synonymous with "cause of action." *Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 831 (9th Cir. 2019). And equitable relief, like an injunction, is "not a claim for relief but rather only a remedy." *Id.* (citation omitted). Therefore, the Exclusion Clause covers causes of action that can provide certain remedies—specifically an injunction that prevents or stops actual or threatened violations of IXL's intellectual property or proprietary rights.

Alpha's position—that the Exclusion Clause only covers claims that are strictly "intellectual property" claims—is not reconcilable with the Clause's focus on remedies. Mot. at 12:3–10; Opp. at 14:6–20. The Clause is not directed to specific claim types but instead provides

[2] Alpha also argues that the phrase "other . . . proprietary rights" in the Exclusion Clause does not change the fact that the Clause only excludes claims concerning IXL's intellectual property rights. Mot. at 12:11–13:12. But both IXL's CFAA and DMCA claims are based on Alpha's alleged theft and violation of IXL's intellectual property *and* proprietary rights. Opp. at 1:25–27. Because these claims are premised in part on IXL's intellectual property rights, the Court need not construe the scope of the term "other . . . proprietary rights" in the Exclusion Clause to resolve Alpha's Motion.

a judicial forum for any claim that seeks to vindicate certain IXL property rights by preventing or enjoining a violation of those rights. Opp. at 14:6–20. To that end, Alpha's position that the Clause does not cover claims that address "a means of achieving such violations" ignores the word "prevent" in the Clause. Reply at 8:6–20; *see* Opp. at 11:6–12:16 (arguing claims that seek to prevent Alpha from intruding into IXL's platform to steal IXL's information are excluded from arbitration). A claim that seeks a remedy which stops further violations from happening or impedes them falls within the Clause. *See Prevent*, Black's Law Dictionary (12th ed. 2024) ("To stop from happening; to hinder or impede."). Finally, Alpha's argument that IXL's position would result in excluding from arbitration claims that seek to enjoin conduct that "might" lead to violations misreads IXL's position. Reply at 8:6–20. IXL's position does not rest on speculation; it asserts that claims that seek to enjoin *actual or threatened* violations of IXL's rights are not subject to arbitration. Opp. at 11:6–12:16. With this construction of the Exclusion Clause in mind, the Court next addresses whether the CFAA and DMCA claims fall within the Clause.

**2. CFAA Claim (Claim 1)**

IXL alleges that (1) Alpha intentionally bypassed IXL's technical controls to access IXL's platform without authorization so that Alpha could steal IXL's intellectual property and proprietary and confidential information; (2) IXL will continue to suffer harm from Alpha's conduct through loss of control over its platform and content and Alpha's exploitation of such content; and (3) IXL is entitled to injunctive relief under 18 U.S.C. § 1030(g). FAC ¶¶ 47–55.

The CFAA "subjects to criminal liability anyone who 'intentionally accesses a computer without authorization or exceeds authorized access,' and thereby obtains computer information." *Van Buren v. United States*, 593 U.S. 374, 378–79 (2021) (quoting 18 U.S.C. § 1030(a)(2)). The statute also permits "[a]ny person who suffers damage or loss by reason of a violation of this section" to "maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g). The "CFAA is best understood as an anti-intrusion statute and not as a 'misappropriation statute'"; thus, courts "look to whether the conduct at issue is analogous to 'breaking and entering.'" *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1196–97 (9th Cir. 2022).

Here, the Court concludes that IXL's CFAA claim is excluded from the parties' arbitration agreement. As discussed, the Court rejects Alpha's argument that the CFAA claim falls outside the Exclusion Clause because it is not an intellectual property claim. *See* Mot. at 13:16–14:12 ("*No* intellectual property right need be infringed, misappropriated, or violated to establish liability.") (emphasis in original). IXL's CFAA claim seeks to enjoin Alpha's unauthorized access to IXL's platform to prevent Alpha from bypassing IXL's safeguards and stealing IXL's intellectual property and proprietary information, in light of Alpha's prior alleged conduct of circumventing IXL's password protections to steal IXL's property. Opp. at 10:24–12:2. As such, the claim falls within the Exclusion Clause because, at a minimum, it seeks to stop Alpha from further violating IXL's rights by repeating its conduct of gaining unlawful access to IXL's platform in order to steal IXL's assets.

Alpha's arguments to the contrary are unpersuasive. Alpha argues that the relief IXL seeks "is not the prevention or injunction of any violation of its intellectual property rights" but instead "would prevent Alpha from accessing IXL's site for *any* purpose." Reply at 8:2–5. Not so. IXL seeks to enjoin Alpha's *unauthorized access* when undertaken for the *purpose* of stealing IXL's intellectual property and proprietary data. Opp. at 15:4–6. Alpha further takes issue with IXL's "breaking and entering" analogy, arguing that the Exclusion Clause covers only "burglary" claims, not those for "breaking and entering." Reply at 8:6–20. But preventing breaking and entering is a way to prevent a threatened burglary—one cannot steal from a building if they cannot gain access to the building. Put simply, greater protection from theft exists if a burglar is prevented from accessing the target of the theft. Thus, a claim seeking to enjoin Alpha from breaching IXL's systems to steal its property is a claim seeking to prevent Alpha from violating IXL's property rights. Opp. at 15:7–17.

**3. DMCA Claim (Claim 4)**

IXL alleges that (1) Alpha violated 17 U.S.C. § 1201(a)(1)(A) by circumventing IXL's controls so that Alpha could access and misappropriate IXL's copyrighted works; (2) IXL will continue to suffer harm from Alpha's conduct through loss of control over its copyrighted content and the costs of investigating and responding to Alpha's unauthorized circumvention and access;

and (3) IXL is entitled to injunctive relief under 17 U.S.C. § 1203(b)(1). FAC ¶¶ 67–84.

"In enacting the DMCA, Congress sought to mitigate the problems presented by copyright enforcement in the digital age." *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 942 (9th Cir. 2010). The DMCA contains "a general prohibition against 'circumventing a technological measure that effectively controls access to a work protected under [the Copyright Act].'" *Id.* (quoting 17 U.S.C. § 1201(a)(1)(A)) (alteration in original). The statute also permits an aggrieved party to bring a civil action and authorizes a court to "grant temporary and permanent injunctions on such terms as it deems reasonable to prevent or restrain a violation." 17 U.S.C. § 1203(a), (b)(1). In the Ninth Circuit, § 1201(a) plaintiffs are not required "to demonstrate that the circumventing technology infringes or facilitates infringement of the plaintiff's copyright (an 'infringement nexus requirement')." *MDY*, 629 F.3d at 948–50. This is because the Ninth Circuit views the anticircumvention right in § 1201(a) as distinct from traditional copyright infringement. *Id.*

Here, the Court concludes that IXL's DMCA claim is excluded from the parties' arbitration agreement. As discussed, the Court rejects Alpha's argument that the DMCA claim falls outside the Exclusion Clause because it does not require a plaintiff to "establish *any* nexus to copyright infringement" but is instead "a claim to prevent unauthorized access." Mot. at 14:13–15:8 (emphasis in original). IXL's DMCA claim seeks to enjoin Alpha from accessing its copyrighted works by circumventing IXL's technological controls in light of Alpha's past alleged conduct of circumventing IXL's password protections to steal IXL's copyrighted content. Opp. at 12:3–13:2. As such, the claim falls within the Exclusion Clause because, at a minimum, it seeks to stop Alpha from further violating IXL's rights by repeating its conduct of circumventing IXL's access controls in order to steal IXL's copyrighted content. Alpha's arguments, which mirror those for the CFAA claim, do not compel a different conclusion.

**B. Stay**

Alpha argues that the Court should stay the entire action, even if IXL's CFAA and DMCA claims are not subject to arbitration. Mot. at 1.

"When a district court finds that a lawsuit involves an arbitrable dispute, and a party

requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024); *see also Herrera v. Cathay Pac. Airways Ltd.*, 104 F.4th 702, 711 (9th Cir. 2024) ("Since *Spizzirri* made clear that a district court does not have discretion to dismiss the action when granting a motion to compel arbitration under 9 U.S.C. § 3, the court is compelled to grant Cathay Pacific's alternative request for a stay."). "Distinct from Title 9 U.S.C. § 3's statutorily mandated stay, a district court maintains authority to enter a stay of litigation as part of its inherent authority to manage its own docket." *Cisco Sys., Inc. v. Chung*, 462 F. Supp. 3d 1024, 1036 (N.D. Cal. 2020). "Where plaintiffs assert both arbitrable and non-arbitrable claims, district courts therefore have discretion whether to proceed with non-arbitrable claims before or after the arbitration." *Byte Bridge, Inc. v. Breville H. Curtis*, No. 26-cv-08627-WHO, 2026 WL 3373281, at *2 (N.D. Cal. Nov. 6, 2026). The Ninth Circuit has expressed "a preference for proceeding with the non-arbitrable claims when feasible." *United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*, 46 F. App'x 412, 415 (9th Cir. 2002); *accord California Crane Sch., Inc. v. Google LLC*, 621 F. Supp. 3d 1024, 1033 (N.D. Cal. 2022).

Here, because none of IXL's claims are subject to arbitration, the FAA's mandatory stay provision is inapplicable. The question is whether the Court should exercise its discretion to stay this action which involves solely non-arbitrable claims. Alpha argues that a stay is proper "to allow the parties' expedited arbitration on related claims to proceed first," and "to promote judicial efficiency, given the substantial factual overlap between the many non-arbitrable claims and remaining claims here." Mot. at 15:21–20:4. IXL contends that a stay is not warranted because Alpha's arbitration is improper and the discretionary factors all weigh against a stay. Opp. at 16:11–21:3.

The Court agrees with IXL that a stay is not warranted. Alpha's stay request rests on the pending JAMS proceeding which Alpha commenced. A district court has discretionary power to stay proceedings in its own court pending the outcome of an independent proceeding. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) (citing *Landis v. North American Co.,* 299 U.S. 248, 254 (1936)). However, while Alpha maintains that the arbitration is proper, IXL proffers evidence that calls into question whether Alpha can maintain the arbitration against IXL.

First, Alpha does not dispute that the TOS requires Alpha to notify IXL prior to commencing arbitration; nor does Alpha contest that it did not notify or discuss with IXL its claims prior to commencing arbitration. Opp. at 17:4–18:4; Reply at 8:24–13:11. Instead, Alpha argues that because it "substantially complied" with the TOS's preconditions, "mere technical noncompliance can and should be excused," even if "the mechanical procedures in the Terms were not followed in their entirety." Reply at 11:11–13. But whether Alpha complied with the condition precedent to arbitration is an issue that must be resolved by a court. *See* TOS at Section 22.C ("A court of competent jurisdiction shall have the authority to enforce this condition precedent to arbitration"). Given that IXL states it will move to enjoin the arbitration if Alpha does not withdraw its demand, it is questionable whether there is an independent proceeding at play here. Opp. at 17 n.3. Second, IXL asserts that Alpha's declaratory relief claims in arbitration are claims that fall within the Exclusion Clause. Opp. at 18:5–19:6. Alpha disagrees. Reply at 10:16–26. But again, the issue of whether a claim is arbitrable must be decided by a court, not an arbitrator. *See* TOS at Section 22.B (Excluded Claims include "disputes regarding the characterization of a Claim as excluded or not under this definition of Excluded Claims"). Therefore, because it is not clear at this time that the parties have triggered the TOS's arbitration provision, the Court concludes that a stay pending the outcome of an independent proceeding is premature. *Cf. Synopsys, Inc. v. Siemens Indus. Software Inc.*, No. 20-cv-04151-WHO, 2021 WL 1238309, at *6 (N.D. Cal. Apr. 2, 2021) (concluding stay under FAA premature where arbitration provision in parties' contract had not yet been triggered).

Accordingly, the Court **DENIES** Alpha's request for a stay.

## V. CONCLUSION

For the reasons stated above, the Court **DENIES** Alpha's Motion to Compel Arbitration.

**IT IS SO ORDERED.**

Dated: November 23, 2026

THOMAS S. HIXSON
United States Magistrate Judge

United States District Court
Northern District of California